Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ALLAN WONG *and* JIMY RUIZ,
*individually and on behalf of all those
similarly situated*,

                                   *Plaintiff,*

*v.*

GLAXOSMITHKLINE CONSUMER
HEALTHCARE HOLDINGS (US) LLC
d/b/a Haleon, *a Delaware limited liability
company*,

                                   *Defendant.*

No. **'24 CV0943 WQHAHG**

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

        Allan Wong and Jimy Ruiz ("Plaintiffs"), individually and on behalf of all others

similarly situated throughout the state of California, by and through undersigned counsel, hereby

bring this action against GlaxoSmithKline Consumer Healthcare Holdings (US) LLC dba

Haleon ("Haleon"), alleging that its Emergen-C dietary supplements (Raspberry, Super Orange,

Tangerine, Cranberry Pomegranate, Pink Lemonade, Strawberry-Kiwi, and Tropical flavors)

(collectively, "the Products"), which are manufactured, packaged, labeled, advertised,

distributed, and sold by Defendant, are misbranded and falsely advertised because they contain

artificial flavoring, and upon information and belief and investigation of counsel alleges as

follows:

**PARTIES**

1.     Plaintiff Allan Wong is and at all times relevant was a citizen of the state of California, domiciled in Brentwood, California.

2.     Plaintiff Jimy Ruiz is and at all times relevant was a citizen of the state of California, domiciled in Chula Vista, California.

3.     Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC d/b/a Haleon is a Delaware limited liability company with its principal place of business and headquarters in New Jersey. On information and belief, decisions relating to marketing, labelling, and formulation of the Products are made at this corporate headquarters. Based on a review of Defendant's corporate filings, none of the current managers and members of Defendant are citizens or residents of California.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

5.     Plaintiffs seek to represent Class members who are citizens of states different from the Defendant.

6.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

7.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

8.      In the alternative, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy excludes $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

10.     Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

11.     Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions.

12.     Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

13.     The losses of some Class members were sustained in this district.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

15.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.     Consumers Pay A Premium for "Clean Labels."**

16.     Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

17.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

18.     This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 11.4 percent from 2016 to 2031, reaching $361 billion in annual sales by 2031. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

19.     On or about January 9, 2024, Wong purchased the Raspberry and Super Orange flavor Products from a Costco store in Antioch, California.

20.     On or about January 20, 2024, Mr. Ruiz purchased the Super Orange and Tangerine flavors from a Costco store in Chula Vista, California.

21.     Wong and Ruiz both prefer to consume only products that contain all-natural flavorings, and frequently review product labels in order to understand the flavorings in food products they are considering for purchase.

1

**B.      Defendant's Use of Synthetic Flavorings and Deceptive Labels.**

2

22.      Defendant Haleon formulates, manufactures, and sells Emergen-C, a drink mix

3

powder that purports to contain 1,000 mg of Vitamin C per serving. They are marketed as

4

providing immune system support, anti-oxidants, and other nutrients that support health and

5

wellness.

6

23.      These dietary supplements come in seven different flavors: Raspberry, Super

7

Orange, Tangerine, Cranberry Pomegranate, Pink Lemonade, Strawberry-Kiwi, and Tropical.

8

However, the Products differ only in flavoring; the base formulation for each flavor is the same,

9

and they are offered for sale for an identical price.

10

24.      Haleon is solely responsible for the contents of the Products' labelling.

11

25.      The front label (or "principal display panel") of all flavors of the Products

12

prominently state that they contain "Natural Flavors" and "Natural Fruit Flavors," using bolded

13

14

type and graphical call-outs or insets to highlight these claims, as shown in this example:

15

16

17

18

19

20

21

22

23

24

25

26

27

28



26.    All flavors of the Products use depictions of fruits on the front label, as shown above, to reinforce the natural flavoring claim that is being made. A reasonable consumer would understand from these textual and graphical elements on the labels that the Products contain only natural flavorings.

27.    These statements are false and/or misleading. All of the Products contain an ingredient known as "malic acid" which is used as a flavoring in the Products. The form of malic acid used in these Products is artificial, as set forth in greater detail below.

28.    The word "malic" in malic acid derives from the Latin *malum*, for apple. Malic acid derived from natural fruit sources (usually apples) is commonly known as "L malic acid" instead of its scientific name, 2-Hydroxybutanedioic acid. L malic acid is quite expensive and is generally cost-prohibitive to use in mass-produced foods and beverages.

29.    There is a synthetic or artificial version of malic acid derived from a petroleum substrate and other synthetic components. It is commonly referred to as DL malic acid, instead of its scientific name of d-hydroxybutanedioic acid. DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

30.    Federal regulations state explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

31.    When testing malic acid to determine whether it is artificial (DL) or natural (L) malic acid, the industry standard is to test for the presence of the "D isomer" of malic acid. This isomer is not present in any amount in L malic acid. Therefore, the presence of the D isomer of malic acid in any amount in a food or beverage indicates the use of artificial DL malic acid instead of natural L malic acid.

32.     Counsel for Plaintiff commissioned testing of the specific items that were purchased by Plaintiffs. That testing was conducted on or about April 30, 2024 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts, a reputable independent food testing and analysis laboratory that has conducted testing for the food and beverage industry since 1984.

33.     This testing by Krueger Food Laboratories revealed that the D isomer was present the Products purchased by Plaintiffs. This testing therefore establishes that the malic acid used in these Products is DL malic acid, and not L malic acid. And as stated explicitly in federal regulations incorporated as substantive state law, "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

## C.     Malic Acid Is Used In the Products As A Flavor.

34.     Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The overall profile of a fruit flavor in a food is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid. Fruits such as oranges and strawberries have their own natural ratio of sugars and acids.

35.     That is, as a matter of food chemistry, there is no such flavor as "strawberry" or the like. Rather, there is a ratio between acids and sugars that is consistent with what the human tongue senses and understands as the flavor "strawberry," and that is naturally found in strawberries.

36.     By adjusting the ratio between sugars and acids through the use of malic acid in foods and beverages, a manufacturer is enabled to create or simulate from scratch a "flavor" such as strawberry, through replication of the sugar/acid ratio present in strawberries in nature.

37.     In addition, by adding malic acid to a food or beverage, the manufacturer is enabled to reinforce the characterizing fruit flavor of the food product. That is, food

manufacturers are enabled to adjust or simulate the flavor notes of a fruit flavor such as strawberry, increasing the food product's commercial acceptability.

38.     Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

39.     Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

40.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

41.     Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

42.     If a food product's characterizing flavor is not created ***exclusively*** by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. Specifically, if any component is present used that "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

43. That is, pursuant to 21 C.F.R. § 101.22(i)(2) even if a food or beverage is flavored with strawberries, its label must state that it is "Artificially Flavored" if an artificial substance is used to reinforce the flavor profile of the food product.

44. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

45. Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

46. That is, whenever a food manufacturer uses malic acid to simulate or reinforce the characterizing flavor of a food or beverage, it is required under federal regulations to state that the food or beverage is "Artificially Flavored" if the malic acid used to simulate or reinforce the characterizing flavor is DL malic acid.

47. By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products by Defendant reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included. The DL malic acid in the Products is therefore an "flavor" within the meaning of 21 C.F.R. § 101.22(i)(2) whose use must be disclosed through an "Artificially Flavored" statement on the front label if it is not derived from natural sources.

48. The fact that testing by Krueger Food Laboratories revealed differences in the concentration of DL malic between various tested flavors of the Products is also indicative of the use of DL malic as a flavor and not for some other purpose.

49.     DL malic acid is an "artificial flavor" and not a "natural flavor" as those terms are defined at 21 C.F.R § 101.22(a)(1) and (a)(3) and corresponding state regulations, because it is not derived from a fruit or vegetable or any other natural source, but rather from a petroleum substrate. Therefore, pursuant to 21 C.F.R. § 101.22(i)(2) and corresponding state regulations, its use must be disclosed through an "Artificially Flavored" statement on the front label of the Products.

50.     Further, the presence of artificial malic acid in the Products has a material bearing on price or consumer acceptance of the Products, and consumers may be and have been misled about the presence or absence of the artificial DL malic acid that is a component in the Product. *See* 21 C.F.R. § 102.5. Among the consumers misled about the presence of artificial malic acid in the Products are the Plaintiffs, as set forth below.

51.     Because the Products contain artificial flavoring, federal regulations and corresponding state law incorporating and enacting those regulations require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored. *See* 21 C.F.R. § 101.22(i)(2).

52.     The Products have none of the required disclosures regarding the use of artificial flavors. In fact, the Products' front and back labels bear the false and deceptive statements that they contain only "Natural Flavors" and "Natural Fruit Flavors," which are reinforced by depictions of fruits.

53.     Plaintiffs reserve the right to amend this Complaint to add further products that contain similar label misrepresentations as testing of the Defendant's food products continues.

**D.     Plaintiff Reasonably Relied on Defendant's Labelling Statements.**

49.     Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

50.     Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to expect that a food product that states that it contains "Natural Flavors" and "Natural Fruit Flavors" does not have its characterizing fruit flavors created, simulated, or reinforced by flavoring agents derived from petroleum substrates.

51.     Plaintiffs reviewed the labels on the Products prior to their purchases, and reviewed the flavoring claims being made on those labels. Plaintiffs reasonably understood Defendant's "Natural Flavors" and "Natural Fruit Flavors" statements, as well as its failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations were false.

52.     Plaintiffs reasonably relied on these label statements such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations regarding flavoring were false and misleading.

53.     In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge Plaintiffs a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

54.     Consumers including Plaintiffs especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products. That is, consumers depend on food

manufacturers to tell the truth about the characteristics of their products while making decisions about which products to buy and consume. Here, Defendant has not told the truth about the flavoring used in the Products.

55.    Plaintiffs suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiffs' injury.

56.    Defendant is in the best position to know what content it placed on its front and back labels and what chemicals and ingredients are in the Products. Plaintiffs nonetheless satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

a.    **Who**: Defendant made material misrepresentations of fact regarding the flavoring of the Products on both the front and back labels of the Products when it stated that the Products were contained "Natural Flavors" and "Natural Fruit Flavors." The labelling of these Products are entirely within the control of Defendant. These representations and omissions constitute material misrepresentation and omissions regarding the use of an artificial flavoring (specifically, DL malic acid) used to create, simulate, or reinforce the characterizing flavor of the Products.

b.    **What**: Defendant knew, or should have known, that the DL malic acid used in the Products was an artificial flavoring. Defendant's conduct here was, and continues to be, fraudulent because it misrepresented that the Products purchased by Plaintiffs contained "Natural Flavors" and "Natural Fruit Flavors" and thereby induced Plaintiffs to purchase a Product they otherwise would not have purchased, or would have paid a lesser amount for.

c.    **When**: Defendant made the material misrepresentations and omissions set forth herein during the putative Class Period, including prior to and at the time Plaintiffs

purchased the Products from Defendant in January 2024, and continues to do so, despite Defendant's knowledge that the Products contained and continue to contain artificial flavorings.

d. **Where**: Defendant's misrepresentations and omissions, as set forth herein, were made on the Products' front and back labels, including the specific Product purchased by Plaintiffs. This Complaint sets forth the precise misrepresentations made and includes an exemplar photograph of the Products' label containing these misrepresentations.

e. **How**: Defendant made material misrepresentations of fact and omissions on its front and back labels when it stated that the Products contained "Natural Flavors" and "Natural Fruit Flavors" despite the Products containing an artificial flavoring, DL malic acid, used to create, simulate, or reinforce the characterizing flavor of the Products within the meaning of 21 C.F.R. § 101.22(i)(2).

f. **Why**: Defendant made the material misrepresentations of fact and omissions as set forth herein in order to induce the purchase of the Products by those persons including Plaintiffs who prefer to purchase food products that use only natural flavorings, or to induce those persons to purchase the Products at a higher price than they otherwise would have paid had the truth about the use of DL malic acid in the Products been known.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

58.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

59.     Plaintiffs reserve the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

60.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

61.     **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiffs believe and aver there are thousands of Class members geographically dispersed throughout the state of California.

62.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b.   Whether a reasonable consumer would understand Defendant's "Natural Flavors" and "Natural Fruit Flavors" claims, as well as the other label elements as described herein, to indicate that the Products contained only natural flavorings, and reasonably relied upon those representations;

c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d. Whether Defendant breached an express warranty;

e. the proper amount of damages;

f. the proper scope of injunctive relief; and

g. the proper amount of attorneys' fees.

63. Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

64. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

65. **Typicality – Rule 23(a)(3)**: Plaintiffs' claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

66. Specifically, all Class members, including Plaintiffs, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiffs seek the same relief as the Class members.

67. There are no defenses available to Defendant that are unique to the named Plaintiffs.

68.  **Adequacy of Representation – Rule 23(a)(4)**: Plaintiffs are fair and adequate representatives of the Class because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendant.

69.  Furthermore, Plaintiffs have selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and Plaintiffs' counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

70.  **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons

    a.  the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

    b.  the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

    c.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests

of other Class members or would substantively impair or impede their ability to protect their interests.

71. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

72. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs would like to purchase the Products and other products produced by Defendant in the future, but cannot currently do so because they cannot rely on the Products' labelling, given the deceptions regarding flavoring found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiffs and the Class relief.

73. Furthermore, Plaintiffs have not merely alleged an "informational" injury, but have also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiffs have therefore alleged that compliance with federal and state regulations regarding the presence of artificial flavors in the Products would cause a decrease in the price of the Products at which Plaintiffs and members of the Class would be willing to buy the Products. As a result, Plaintiffs have alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

74. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

75. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

71.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

72.     Plaintiffs are "consumers" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

73.     The sale of Defendant's Products to Plaintiffs and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

74.     The Products purchased by Plaintiffs and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

75.     As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the flavoring representations that were made by Defendant on the labels of its Products and elsewhere.

76.     Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a.     Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

    b.     Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

    c.     Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

    d.     Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e.   Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

77.   By reason of the foregoing, Plaintiffs and the Class have been irreparably harmed, entitling them to injunctive relief.

78.   Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.  Plaintiffs sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

79.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

80.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs are entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

**COUNT 2**
**UNJUST ENRICHMENT UNDER CALIFORNIA LAW**

81.   Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

82.   Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the flavoring in the Products.

83.   Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

84.     Consumers including Plaintiffs conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

85.     Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

86.     Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

87.     Plaintiffs seek disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

88.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW

89.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

90.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained only "Natural Flavors" and "Natural Fruit Flavors."

91.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs and the Class, which creates an express warranty that the

Products would conform to those affirmations of fact, representations, promises, and descriptions.

92.     The Products do not conform to the express warranty that the Products contained only "Natural Flavors" and "Natural Fruit Flavors" because they contain ingredients that are unnatural and synthetic, *i.e.*, DL malic acid.

93.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief against Defendant:

a.   Certifying the Class;

b.   Declaring that Defendant violated the statutes cited herein and/or was unjustly enriched and/or breached an express warranty;

c.   Awarding actual and other damages;

d.   Ordering an awarding of injunctive relief, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.   Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs;

f.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.   Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,


/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

May 30, 2024

CLASS ACTION COMPLAINT